UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

CASE NO.:

**JURY TRIAL REQUESTED**

JUDITH MANSO,

    Plaintiff,

v.

AMERICAN WELDING SOCIETY, INC.,
a New York not-for-profit corporation,

    Defendant.

_____/

**COMPLAINT**

Plaintiff, JUDITH MANSO ("Plaintiff") sues Defendant, AMERICAN WELDING SOCIETY, INC., a New York not-for-profit corporation ("Defendant"), and alleges as follows:

**NATURE OF CLAIMS**

1.    This is an action for damages and equitable relief for disability discrimination retaliation in violation of the Americans with Disabilities Act, as amended, (hereafter "ADAAA"), and the Florida Civil Rights Act of 1992, as amended, §760.10 et seq., Florida Statutes (hereafter "FCRA").

**PARTIES, JURISDICTION AND VENUE**

2.    Plaintiff is a former employee of Defendant. Plaintiff held multiple and various positions during her employment with Defendant owing to her record of outstanding performance. At the time of Plaintiff's termination, she was employed in the position of SharePoint Administrator and Project Manager.

3. Defendant has been, within the time frame pertinent to this action, doing business in Miami-Dade County, Florida. Defendant was Plaintiff's employer, as that term is defined by the ADAAA and FCRA.

4. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 because Plaintiff seeks to recover damages under the ADAAA. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

5. Venue is proper in the United States District Court for the Southern District of Florida, Miami-Dade Division, since it is where the claims arose and where Defendant maintains the office in which Plaintiff was employed.

## CONDITIONS PRECEDENT

6. Plaintiff timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on July 28, 2020. A copy of the Charge of Discrimination is attached hereto as **Exhibit "A"**. This charge was dual filed with the Florida Commission on Human Relations ("FCHR"). Plaintiff's timely filed charge alleged discrimination based upon handicap and disability, as well as retaliation. More than 180 days have passed since Plaintiff filed the charge and no cause finding was issued within that time frame. A right to sue notice was received by Plaintiff on June 9, 2021. A copy of the Right to Sue is attached hereto as **Exhibit "B"**. This action is timely filed.

## GENERAL ALLEGATIONS

7. Plaintiff was employed by Defendant for approximately eight (8) years.

8. During her eight (8) years of employment, Plaintiff was an exemplary employee. She held various positions with Defendant, received promotions and other opportunities as a result of her excellent work product and performance, and received pay raises and bonuses.

9. At no time during Plaintiff's employment was she subjected to disciplinary action because of poor performance or misconduct.

10. During Plaintiff's employment, Defendant underwent numerous changes in management and to the structure of its staffing and personnel. Plaintiff continued to excel in her performance notwithstanding these changes.

11. Plaintiff was diagnosed with Multiple Sclerosis ("MS") in March of 2016.

12. Defendant was aware at all times material of Plaintiff's MS as she did not hide her condition and disclosed it to management.

13. Between 2016 and early 2019, Plaintiff was able to perform her work for Defendant with minimal restrictions.

14. Beginning in March of 2019, however, Plaintiff's MS began to progress. As a result, Plaintiff required a walker. Plaintiff also experienced other symptoms and side effects.

15. Despite the progression of her MS, Plaintiff continued to perform all the essential functions of her position. At times, Plaintiff performed her work from home, and was able to perform all the essential functions of her position remotely. Defendant's then-Chief Executive Officer ("CEO"), Matt Miller, had permitted Plaintiff to work remotely throughout 2019 without issue.

16. Mr. Miller resigned in June of 2019. Shortly after his resignation, Ray Shook assumed the role of interim CEO. In stark contrast to Mr. Miller, Mr. Shook strongly preferred that Defendant's employees report to work, be at their desks and not work remotely.

17. In 2019, Plaintiff was officially the Director, Project Management Office. However, by mid-2019, that position existed in name only since Plaintiff's job duties and responsibilities had markedly changed. In 2019, Plaintiff was working on several projects related

to information technologies ("IT"), and she was essentially performing the role of a SharePoint Administrator/Business Analyst/Project Manager.

18. During this time, Plaintiff was able to perform all the essential functions of her position remotely. At no time were there ever any concerns or issues raised regarding Plaintiff's work performance. At no time did Defendant ever raise any concerns about Plaintiff's ability to perform the essential functions of her role and position.

19. Beginning in October of 2019, Plaintiff's managers, John Perry and John Gayler, began having discussions with Plaintiff about the future of her role with Defendant. Specifically, conversations were had concerning changing Plaintiff's job title to accurately reflect her job duties and responsibilities, as well as the 2020 goals and milestones for Plaintiff in that role.

20. Plaintiff received goals and milestones for 2020.

21. Plaintiff's job functions and responsibilities officially changed to SharePoint Administrator and Project Manager on January 1, 2020, although Defendant did not change the actual title of the position.

22. Throughout 2020, Plaintiff worked diligently towards achieving the goals and milestones set for her position.

23. In February of 2020, Plaintiff's treating physicians noted further progression of her MS. They assisted her in formulating reasonable accommodations that would assist her in performing the essential functions of her position. She then notified Defendant's management that she would need specific accommodations to continue working from home.

24. Prior to submitting her request for an accommodation in February of 2020, Defendant imposed an arbitrary deadline on Plaintiff to submit her accommodation certification from her physician and formal request(s) by February 27, 2020.

25. Nonetheless, Plaintiff requested reasonable accommodations from Defendant on February 19, 2020, well in advance of Defendant's self-imposed deadline. Plaintiff's accommodation request was submitted on Defendant's "Employee Medical Release and Placement Evaluation Form", they previously provided to her.

26. Based on her physician's certifications on the completed forms, they indicated Plaintiff should receive the following accommodations: (1) continuation of remote work and (2) a schedule adjustment whereby Plaintiff would work four (4) ten (10) hour days as opposed to five (5) eight (8) hour days (i.e., allowing for a longer rest period following a short work week with longer workdays).

27. Following Plaintiff's submission of her request for reasonable accommodation(s), she continued to work remotely.

28. Thereafter, Plaintiff repeatedly requested acknowledgment of her reasonable accommodation request from the Director of Human Resources; and she ultimately received it from Defendant after much persistence on March 3, 2020. Aside from finally acknowledging receipt of Plaintiff's reasonable accommodation request on March 3, 2020, Defendant failed to respond to Plaintiff's reasonable accommodation(s) request as to either of the items enumerated in paragraph 26 above.

29. Approximately two (2) months later, Plaintiff was then informed by Defendant on May 8, 2020, that her position was being eliminated, and that they were going through a "restructuring" and/or layoff.

30. At the time of Plaintiff's unlawful termination, there remained open and available positions of employment for which Plaintiff was well-qualified. At no time prior to, or on the date of her termination, was Plaintiff offered continued employment in such a position.

31. At no time prior to her termination did Defendant discuss the possibility of Plaintiff assuming a revised or different role within Defendant in lieu of being terminated, notwithstanding that she had been through numerous promotions and title changes throughout her employment.

32. In fact, Plaintiff had recently sat on a panel that interviewed for a Business Analyst position, one in which she was more than qualified, and otherwise demonstrates Defendant's pretext motive regarding any such layoff occurring at the time of her termination.

33. Plaintiff had been given no reason to believe or suspect that her position, officially established on January 1, 2020 (i.e., just five (5) months prior to her termination), would be eliminated in 2020.

34. Interestingly, although Plaintiff experienced numerous job title and position changes as a result of her successful accomplishments, together with Defendant's own efforts to restructure its workplace, Defendant's conduct was nothing less than discriminatory when it "eliminated" Plaintiff under the pretext of yet another restructuring and layoff shortly following her request for accommodation.

35. As a consequence of Defendant's illegal conduct, Plaintiff has retained counsel to represent her in this matter. Plaintiff has incurred, and will continue to incur, attorneys' fees and costs associated with that representation.

**COUNT I**
**DISABILITY DISCRIMINATION (TERMINATION) IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED BY THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT, 42 U.S.C. § 12101 ET SEQ.**

36. Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

37. Plaintiff's limitations stemming from her MS substantially impacted Plaintiff's major life activities. The major life activities substantially limited include, but are not limited to,

walking and neurological function.  See also 29 C.F.R. § 1630.2(j)(3)(iii).

38. Plaintiff's MS constitutes a disability within the meaning of the ADAAA.

39. Plaintiff was capable of performing the essential functions of her position with or without a reasonable accommodation.

40. Defendant regarded Plaintiff as having a disability.

41. Plaintiff is the member of a protected class (disability), was qualified for the position she held, and was subjected to adverse employment action when she was terminated.

42. Plaintiff's protected class (disability) was a motivating factor, as well as the but-for cause, of the adverse employment action to which she was subjected.

43. Defendant failed to respond to Plaintiff's reasonable accommodation requests in 2020.

44. Plaintiff was terminated expressly on account of her actual and/or perceived disability.

45. The discrimination described above was done maliciously, intentionally, and with a reckless disregard for Plaintiff's protected rights under the law.

46. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to 42 U.S.C. § 12117, punitive damages, prejudgment interest, equitable relief, as well as any and all other relief

the court deems just, equitable, and proper.

## COUNT II
## RETALIATION (TERMINATION) IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED BY THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT, 42 U.S.C. § 12101 ET SEQ.

47. Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

48. Plaintiff's limitations stemming from her MS substantially impacted Plaintiff's major life activities. The major life activities substantially limited include, but are not limited to, walking and neurological function. See also 29 C.F.R. § 1630.2(j)(3)(iii).

49. Plaintiff's MS constitutes a disability within the meaning of the ADAAA.

50. Plaintiff was capable of performing the essential functions of her position with or without a reasonable accommodation.

51. Plaintiff was entitled to a reasonable accommodation of her disabilities.

52. Plaintiff sought out a reasonable accommodation of her disabilities prior to her unlawful termination.

53. Plaintiff engaged in protected activity when she sought out a reasonable accommodation for her disability.

54. Plaintiff's protected class (protected conduct) was a motivating factor, as well as the but-for cause, of the adverse employment action to which she was subjected.

55. Defendant failed its obligation to engage in an interactive process with Plaintiff following her reasonable accommodation request. Instead, Defendant disregarded Plaintiff's request.

56. Plaintiff was terminated shortly after having requested a reasonable accommodation.

57. The retaliation described above was done maliciously, intentionally, and with a reckless disregard for Plaintiff's protected rights under the law.

58. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to 42 U.S.C. § 12117, punitive damages, prejudgment interest, equitable relief, as well as any and all other relief the court deems just, equitable, and proper.

**COUNT III**
**DISCRIMINATION (FAILURE TO ACCOMMODATE) IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED BY THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT, 42 U.S.C. § 12101 ET SEQ.**

59. Plaintiff hereby restates and realleges each and every factual allegation contained in paragraphs 1-35.

60. Plaintiff's limitations stemming from her MS substantially impacted Plaintiff's major life activities. The major life activities substantially limited include, but are not limited to, walking and neurological function. See also 29 C.F.R. § 1630.2(j)(3)(iii).

61. Plaintiff's MS constitutes a disability within the meaning of the ADAAA.

62. Plaintiff was capable of performing the essential functions of her position with or

without a reasonable accommodation.

63. Plaintiff was entitled to a reasonable accommodation of her disabilities.

64. Defendant had an obligation to engage in good faith in an interactive process with Plaintiff following her request for a reasonable accommodation in 2020.

65. Plaintiff's accommodation request was entirely ignored and denied.

66. Defendant failed to engage in any interactive process with Plaintiff.

67. Plaintiff's disability could have been reasonably accommodated by Defendant.

68. The discrimination described above was done maliciously, intentionally, and with a reckless disregard for Plaintiff's protected rights under the law.

69. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to 42 U.S.C § 12117, punitive damages, prejudgment interest, equitable relief, as well as any and all other relief the court deems just, equitable, and proper.

### COUNT IV
### HANDICAP DISCRIMINATION (TERMINATION) IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, FLA. STAT. 760 <u>ET SEQ.</u>

70. Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

71. Plaintiff's limitations stemming from her MS substantially impacted Plaintiff's major life activities. The major life activities substantially limited include, but are not limited to, walking and neurological function. See also 29 C.F.R. § 1630.2(j)(3)(iii).

72. Plaintiff's MS constitutes a handicap within the meaning of the FCRA.

73. Plaintiff was capable of performing the essential functions of her position with or without a reasonable accommodation.

74. Defendant regarded Plaintiff as having a handicap.

75. Plaintiff is the member of a protected class (handicap), was qualified for the position she held, and was subjected to adverse employment action when she was terminated.

76. Plaintiff's protected class (handicap) was a motivating factor, as well as the but-for cause, of the adverse employment action to which she was subjected.

77. Defendant failed to respond to Plaintiff's reasonable accommodation requests in 2020.

78. Plaintiff was terminated expressly on account of her actual and/or perceived handicap.

79. The discrimination described above was done maliciously, intentionally, and with a reckless disregard for Plaintiff's protected rights under the law.

80. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to § 760.11, punitive damages, prejudgment interest, equitable relief, as well as any and all other relief that the court deems just, equitable, and proper.

## COUNT V
### RETALIATION (TERMINATION) IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, FLA. STAT. 760 <u>ET SEQ.</u>

81. Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

82. Plaintiff's limitations stemming from her MS substantially impacted Plaintiff's major life activities. The major life activities substantially limited include, but are not limited to, walking and neurological function. <u>See also</u> 29 C.F.R. § 1630.2(j)(3)(iii).

83. Plaintiff's MS constitutes a handicap within the meaning of the FCRA.

84. Plaintiff was capable of performing the essential functions of her position with or without a reasonable accommodation.

85. Plaintiff was entitled to a reasonable accommodation of her handicap.

86. Plaintiff sought out a reasonable accommodation of her handicap prior to her unlawful termination.

87. Plaintiff engaged in protected activity when she sought out a reasonable accommodation for her handicap.

88. Plaintiff's protected class (protected conduct) was a motivating factor, as well as the but-for cause, of the adverse employment action to which she was subjected.

89. Defendant failed its obligation to engage in an interactive process with Plaintiff

DEUTSCH ROTBART & ASSOCIATES, P.A.

following her reasonable accommodation request. Instead, Defendant disregarded Plaintiff's request.

90. Plaintiff was terminated shortly after having requested a reasonable accommodation.

91. The retaliation described above was done maliciously, intentionally, and with a reckless disregard for Plaintiff's protected rights under the law.

92. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to § 760.11, punitive damages, prejudgment interest, equitable relief, as well as any and all other relief that the court deems just, equitable, and proper.

## COUNT VI
### HANDICAP DISCRIMINATION (FAILURE TO ACCOMMODATE) IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, FLA. STAT. 760 ET SEQ.

93. Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

94. Plaintiff's limitations stemming from her MS substantially impacted Plaintiff's major life activities. The major life activities substantially limited include, but are not limited to, walking and neurological function. See also 29 C.F.R. § 1630.2(j)(3)(iii).

95. Plaintiff's MS constitutes a handicap within the meaning of the FCRA.

96. Plaintiff was capable of performing the essential functions of her position with or without a reasonable accommodation.

97. Plaintiff was entitled to a reasonable accommodation for her handicap.

98. Defendant had an obligation to engage in good faith in an interactive process with Plaintiff following her request for an accommodation in 2020.

99. Defendant ignored and denied Plaintiff's request through its failure to respond and terminate Plaintiff.

100. Defendant failed to engage in any interactive process with Plaintiff.

101. Plaintiff's handicap could have been reasonably accommodated by Defendant.

102. The discrimination described above was done maliciously, intentionally, and with a reckless disregard for Plaintiff's protected rights under the law.

103. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to § 760.11, punitive damages, prejudgment interest, equitable relief, and any and all other relief that the court deems just, equitable, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, JUDITH MANSO, demands trial by jury for all issues so triable under federal and state law.

                Respectfully submitted,

                DEUTSCH ROTBART & ASSOCIATES, P.A.
                Counsel for Plaintiff Judith Manso
                4755 Technology Way, Suite 106
                Boca Raton, Florida 33431
                Telephone:  561.361.8010
                Facsimile:   561.361.8086
                Email:  edrotbart@dralawfirm.com

            BY: *s/Erika Deutsch Rotbart*
                  Erika Deutsch Rotbart, Esq.
                  Florida Bar No.: 0047686